EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel M. Egozcue Rosario<br><br>Peticionario<br><br>v.<br><br>Cesar Reyes Carrasquillo, et als<br><br>Recurrido | Certiorari<br><br>2006 TSPR 114<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2004-124

Fecha: 30 de junio de 2006

Tribunal de Apelaciones:

        Región II de Bayamón Panel I

Juez Ponente:

        Hon. Hiram Sánchez Martínez

Abogados de la Parte Peticionaria:

        Lcdo. Carlos A. Quilichini Paz
        Lcdo. José R. De la Cruz Feliciano

Abogado de la Parte Recurrida:

        Lcdo. Raúl O. Hernández González

Materia: Incumplimiento de Contrato; Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel M. Egozcue Rosario

      Peticionario                   CC-2004-124

            v.

Cesar Reyes Carrasquillo, et als

       Recurrido

PER CURIAM

San Juan, Puerto Rico, a 30 de junio 2006.

Mediante el presente recurso se nos solicita la revocación de una Sentencia emitida por el entonces Tribunal de Circuito de Apelaciones. En virtud de la misma, el foro intermedio apelativo revocó parcialmente una Sentencia dictada por el Tribunal de Primera Instancia. Al hacerlo, eliminó una partida de $84,767 por concepto de pérdidas operacionales que había sido concedida al allí peticionario por el Tribunal de Primera Instancia. Veamos los hechos que originan el presente recurso.

I

El señor Ángel M. Egozcue Rosario contrató los servicios del señor César Reyes Carrasquillo para que lo asesorara en la compra e instalación de ciertas plantas generadoras de electricidad, para sus cuatro (4) oficinas y su residencia.

En marzo de 1997, el señor Reyes Carrasquillo realizó un estudio con el propósito de determinar las necesidades particulares de cada una de las oficinas y de la residencia del señor Egozcue Rosario. Concluido dicho estudio, le recomendó la compra de cinco (5) plantas generadoras de electricidad. Dichas plantas eléctricas fueron adquiridas por el señor Egozcue Rosario en Bella Internacional por $29,989. Adquirió, además, cinco (5) interruptores ("transfer switches") por $7,500.

El señor Reyes Carrasquillo sometió una propuesta adicional para proveer, entre otros servicios, la instalación de los equipos antes mencionados en las oficinas y la casa del señor Egozcue Rosario.

Las referidas plantas no fueron instaladas adecuadamente ni pudieron suplir los requerimientos energéticos de los lugares en los que habían sido instaladas. Ante ello, Reyes Carrasquillo se comprometió a corregir las instalaciones defectuosas entre los meses de febrero a mayo de 1998, lo cual incumplió.

El huracán Georges azotó a Puerto Rico el 21 de septiembre de 1998 y el país sufrió una interrupción general del servicio eléctrico. Debido a que las plantas

eléctricas habían sido mal instaladas, éstas no cumplieron su función durante dicho periodo.

El 19 de abril de 2000, el señor Egozcue Rosario presentó una demanda por incumplimiento de contrato y daños contra el señor Reyes Carrasquillo, su esposa y la sociedad legal de gananciales compuesta por ambos. Sostuvo que Reyes Carrasquillo instaló los equipos de forma negligente y en crasa violación de las recomendaciones del fabricante de las plantas generadoras. Destacó que los equipos no eran capaces de suplir la demanda energética de las oficinas y de su hogar. Reclamó, como consecuencia del alegado incumplimiento, la suma de $29,989 en concepto de compra y adquisición de plantas generadoras de electricidad no adecuadas; $7,500 por la compra y adquisición de interruptores de emergencia; $11,000 por concepto de servicios profesionales satisfechos al señor Reyes Carrasquillo; $100,000 por concepto de pérdidas operacionales y de ingresos; $75,000 por concepto de la adquisición de plantas generadoras adecuadas, y su correspondiente instalación; y $50,000 por concepto de angustias y sufrimientos mentales y emocionales.[1]

Reyes Carrasquillo contestó la demanda y reconvino. Sostuvo, en su reconvención, que prestó los servicios por los cuales fue contratado al demandante de autos y éste le adeudaba $9,000. Arguyó, además, haberle prestado servicios adicionales a los contratados y que el señor

_____

[1] Demanda, Apéndice del recurso de *Certiorari*, págs. 66-70.

Egozcue Rosario se había negado a pagar por los mismos. Reclamó $100,000 por concepto de daños emocionales y angustias mentales. Fundamentó su reclamo en que durante la relación habida con el señor Egozcue Rosario, éste lo humilló y le hirió su dignidad, le exigía "como si fuera un ser superior por el mero hecho de contar con un título de abogado". Añadió que constantemente lo amenazaba ya que "él sí sabía de leyes", y que las cosas se tenían que hacer a su manera.[2]

El 28 agosto de 2001 el Tribunal de Primera Instancia dictó sentencia declarando con lugar la demanda incoada. Condenó a los demandados de autos el pago de $29,989 por la compra de las plantas generadoras de electricidad que resultaron ser inadecuadas; $7,500 por la compra de los interruptores de emergencia; $11,000 por servicios profesionales pagados a Reyes Carrasquillo y $84,767 por pérdidas operacionales y de ingresos. Impuso, además, el pago de costas, gastos y honorarios de abogado. Denegó, sin embargo, la partida de $75,000 reclamada por concepto del costo estimado del nuevo equipo necesario para reemplazar el equipo inadecuado, por entender que no era un daño o gasto atribuible a la conducta del demandado de autos.[3]

---

[2] Apéndice del recurso de *Certiorari*, págs. 71-74.

[3] Íd., págs. 120-128. El foro primario puntualizó en su Sentencia que aunque el demandante de autos reclamó una partida de $100,000 por concepto de pérdidas operacionales y de ingresos, declaró en juicio haber tenido pérdidas montantes a $84,767 por el tiempo en que sus oficinas no operaron. Íd., pág. 124, nota al calce número 1.

Insatisfechos, los demandados de autos acudieron al entonces Tribunal de Circuito de Apelaciones mediante recurso de apelación presentado el 9 de noviembre de 2001. Entre los señalamientos de error ante dicho foro, plantearon la improcedencia de la partida de $84,767 concedida al demandante de autos por concepto de pérdidas operacionales y de ingresos. Arguyeron que ante el foro primario no se presentó prueba documental o demostrativa para establecer la referida partida. En el presente caso, mediante su escrito de apelación, el señor Reyes Carrasquillo planteó que actuó incorrectamente el foro primario al conceder daños por pérdidas operacionales y de ingresos por $84,767 al señor Egozcue Rosario basándose exclusivamente en el testimonio del apelado. Reconoció que aunque los daños por concepto de pérdidas operaciones o pérdida de ingreso no se tienen que demostrar con certeza absoluta ni matemática, debe haber una base razonable que permita realizar una determinación prudente, que no sea una especulación ni una conjetura.[4] Sostuvo que el allí apelado exageró en su demanda con relación a la partida por concepto de pérdidas operacionales y de ingresos y que su testimonio no ofreció base alguna para sostener la partida concedida por dicho concepto.[5]

El 7 de diciembre de 2001, los entonces apelantes, presentaron ante el Tribunal de Apelaciones un "Proyecto

---

[4] Apelación, Apéndice del recurso de *Certiorari*, pág. 59.

[5] Íd.

de exposición narrativa de la prueba oral, a tenor con la Regla 19 del Tribunal de Circuito de Apelaciones".[6]    El 27 de diciembre de 2001, el apelado presentó la correspondiente "Réplica al proyecto de exposición narrativa de la prueba oral" presentada por los apelantes.[7]

El 11 de enero de 2002, el foro intermedio apelativo ordenó a los abogados de las partes a reunirse o conversar para discutir las discrepancias respecto a la exposición narrativa de la prueba oral, con miras a presentar una exposición narrativa de la prueba oral estipulada. Puntualizó en su resolución que si luego de haberse reunido las partes, no lograban una exposición narrativa de la prueba oral estipulada, "la parte demandante [sic] deberá informarlo inmediatamente para remitir el asunto al Tribunal de Primera Instancia para que se lleve a cabo el trámite dispuesto por ley y se impongan las sanciones correspondientes a la parte que hubiese obstaculizado o demorado el proceso de aprobación de la exposición narrativa de la prueba".[8]

En cumplimiento con la referida orden, el 19 de febrero de 2002, las partes presentaron una "Moción consignando exposición narrativa de la prueba oral".[9]    El 26 de noviembre de 2003, el foro intermedio apelativo emitió una Sentencia modificando el dictamen del foro primario.

---

[6] Íd., págs. 129-134.

[7] Íd., págs. 153-166.

[8] Íd., págs. 168-169.

[9] Íd., págs. 170-176.

Específicamente, redujo de $11,000 a $9,000 la partida correspondiente a los honorarios que el apelante debía pagar al apelado y eliminó la partida de $84,767 correspondiente a pérdidas operacionales y de ingresos. Respecto a esta última partida, entendió que no había base en la prueba presentada para sostener la conclusión de que el señor Egozcue Rosario sufrió pérdidas en su negocio ascendentes a $84,767. Puntualizó que, por tratarse de un recurso de apelación sometido con una exposición narrativa de la prueba oral estipulada por ambas partes, su función revisora estaba enmarcada y limitada por lo que surja de la misma. Señaló que la referida exposición de la prueba oral estipulada por las partes no contenía referencia alguna a lo que Egozcue Rosario declaró en juicio con respecto a las pérdidas de su negocio. Añadió que no se admitió en juicio prueba documental alguna referente a la partida especial de pérdida de ingresos y que la única prueba al respecto la aportó el testimonio vertido en el juicio por el demandante señor Egozcue Rosario. Puntualizó que, si en efecto el señor Egozcue Rosario testificó durante el juicio, debió asegurarse de que la exposición narrativa de la prueba oral que estipuló con el apelante era correcta y completa.[10]

Insatisfecho, Egozcue Rosario acudió ante nos mediante recurso de *certiorari*, señalando los errores siguientes:

> **ERRÓ EL TRIBUNAL DE APELACIONES AL ELIMINAR LA PARTIDA DE PÉRDIDAS OPERACIONALES A PESAR DE QUE LA PARTE**

---

[10] Íd., págs. 1-34.

**DEMANDADA ESTIPULÓ EL CONTENIDO DEL TESTIMONIO Y EL HECHO DE QUE EL TESTIMONIO NO FUE REBATIDO DE FORMA ALGUNA.**

**ERRÓ EL TRIBUNAL DE APELACIONES AL ELIMINAR LA PARTIDA DE DAÑOS POR PÉRDIDAS OPERACIONALES UTILIZANDO COMO FUNDAMENTO QUE EL TESTIMONIO DEL RECURRENTE ES INSUFICIENTE EN DERECHO PARA PROBAR CONCESIÓN DE LAS MISMAS Y AL ENTRAR EN CONSIDERACIONES DE CREDIBILIDAD DEL TESTIGO.**

Examinadas las comparecencias de las partes y los autos del presente caso, nos encontramos en posición de resolver.

II

Por estar relacionados discutiremos ambos señalamientos de error conjuntamente.

La Regla 16 del Reglamento del Tribunal de Apelaciones, entonces vigente, disponía, que cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, se procederá conforme disponen las Reglas 19, 20 y 76, según corresponda.[11]

En específico, la Regla 19[12] del referido cuerpo reglamentario disponía lo siguiente:

---

[11] Véase, 4 L.P.R.A., Ap. XXII-A, R. 16.

[12] 4 L.P.R.A., Ap. XXII-A, R. 19. La referida disposición reglamentaria, resalta la preferencia de una exposición estipulada de la prueba a una exposición narrativa. Véase, Srio. Del Trabajo v. Puig Abraham, 2002 T.S.P.R. 150, 2002 J.T.S. 156, 158 D.P.R. ___ (2002) y Hernández Colón, op cit., pág. 363.

Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, discutirá dicho error en su escrito inicial, en forma preliminar, de acuerdo con la información y el recuerdo que tenga sobre dicha prueba.

Dentro de los treinta (30) días siguientes a la presentación de la apelación, la parte apelante preparará y someterá al Tribunal de Circuito de Apelaciones un proyecto de exposición narrativa de la prueba oral pertinente al recurso, con una moción en la que justificará la necesidad de que el Tribunal considere la prueba oral para la adecuada disposición del recurso.

Notificará copia de la moción y del proyecto de exposición narrativa a la parte apelada.

Durante los veinte (20) días siguientes, las partes harán esfuerzos, mediante comunicaciones y reuniones entre ellos, para lograr una exposición estipulada, tomando como base el proyecto de exposición narrativa de la parte apelante.

Si transcurridos dichos veinte (20) días no se produce una exposición estipulada, la parte apelada presentará su oposición a la moción y al proyecto de estipulación de la parte apelante, en la cual señalará específicamente y en detalle, con referencia a la prueba presentada, sus objeciones al proyecto de la parte apelante y las razones que le impiden llegar a una exposición narrativa estipulada. De lo contrario se podrá tomar el proyecto de la parte apelante como exposición narrativa de la prueba testifical.

Con vista a la moción y al proyecto de la parte apelante y a la oposición de la parte apelada, el Tribunal de Circuito de Apelaciones podrá:

(a) Ordenar a las partes que se reúnan nuevamente para tratar de lograr una exposición narrativa estipulada; o

(b) celebrar una vista ante el Tribunal de Circuito de Apelaciones, o por delegación, ante cualquier juez del panel correspondiente, a los fines de auscultar la posibilidad de que las partes armonicen o minimicen sus diferencias en cuanto a la exposición narrativa de la prueba;

(c) ordenar a la parte apelante que, conforme a la Regla 20 de este Apéndice, proceda a obtener la aprobación del tribunal apelado

respecto a la exposición narrativa o a cualquier porción de ella sobre la cual no haya habido acuerdo; lo que signe es (d) y no la palabra ordena [sic].

(d) Ordenar la preparación total o parcial de una transcripción de la prueba oral, conforme a la Regla 76 de este Apéndice.

El Tribunal de Circuito de Apelaciones podrá imponer costas y sanciones a la parte o a su abogado(a) de determinar que obstaculizaron el logro de una exposición estipulada de la prueba y ocasionaron retraso en cuanto a la solución del recurso. Asimismo, podrá imponer sanciones a cualquier parte o a su abogado(a) en los casos en que intencionalmente se le haya hecho una representación incorrecta al Tribunal de Circuito de Apelaciones sobre el contenido de la prueba testifical.

Conforme surge de la referida disposición reglamentaria, cuando se trate de un error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, existen tres (3) mecanismos que permiten al foro intermedio apelativo estar en condiciones de resolver el referido señalamiento de error: mediante la exposición estipulada de la prueba, la exposición narrativa de la prueba o la trascripción de la prueba oral.

Así, cuando una de las partes ha señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación de la prueba por parte del Tribunal de Primera Instancia, el foro intermedio apelativo, en aras de cumplir cabalmente su función revisora, debe ordenar una exposición narrativa de la prueba en ausencia de una

estipulada u ordenar la transcripción total o parcial de la evidencia desfilada ante el Tribunal de Primera Instancia.[13]

Sin embargo, si las partes llegan a un acuerdo sobre la exposición narrativa de la prueba (exposición estipulada de la prueba), así lo notificarán al tribunal y ésta se convertirá en la exposición de la prueba testifical estipulada, en virtud de la cual se evaluará el error señalado.[14]

Por ello, "[e]l abogado jamás debe olvidar que la exposición narrativa de la prueba oral debe ser un relato sobrio, objetivo, **lo más fiel y exacto posible** al verdadero testimonio vertido en el juicio.  Los jueces de apelaciones no estuvieron en el juicio, y de ordinario, tampoco escuchan su grabación.  Por lo tanto, confían en que la exposición narrativa de la prueba oral es correcta y que no quita ni añade elementos de prueba que no hayan sido los verdaderamente presentados en el juicio.  Las determinaciones de hechos que el tribunal de apelaciones incorpora a su sentencia son las que surgen de tales exposiciones narrativas"[15][énfasis suplido].

En el presente caso, con el propósito de que el foro intermedio apelativo evaluara su reclamo de insuficiencia de la prueba, y en virtud de la orden emitida por el

---

[13] Hernández v. San Lorenzo Const., 153 D.P.R. 405, 421-422 (2001).

[14] Véase, R. Hernández Colón, Práctica Jurídica de Puerto Rico - Derecho Procesal Civil, San Juan, 1997, pág. 364.

[15] H.A. Sánchez Martínez, Práctica Jurídica de Puerto Rico - Derecho Procesal Apelativo, Lexis Nexis of Puerto Rico, San Juan, 2001, §4403, pág. 678.

entonces Tribunal de Circuito de Apelaciones, el recurso de apelación se sometió a base de una exposición narrativa de la prueba oral estipulada por ambas partes.

De la referida exposición narrativa estipulada se colige, respecto al testimonio de Egozcue acerca de las pérdidas operacionales y de ingresos sufridas por éste, lo siguiente:

> Declaró el apelado que para el 21 de septiembre de 1998 azotó el Huracán Georges por lo que se fue el servicio eléctrico en todas sus oficinas. Dijo que las plantas no funcionaron y a pesar de varias llamadas al apelante, este tardó varios días en contestar. Testificó que el tiempo que no pudo operar sufrió pérdidas ascendentes a $84,767.
> El Sr. Egozcue no fue rebatido de forma alguna, y sobre este aspecto no fue contrainterrogado por la parte apelante. A pesar de la objeción de la parte apelante, el tribunal a quo admitió el testimonio sobre pérdidas operacionales por ser Contador Público autorizado al [sic] apelado.

En ningún otro lugar de la exposición narrativa estipulada se hace referencia al tema de las pérdidas que el allí apelado alegó haber sufrido. Ello, a pesar de que el señor Egozcue Rosario sabía que se cuestionaba ante el referido foro si su testimonio era suficiente para sostener la partida concedida por concepto de pérdidas operacionales y de ingresos.

Arguye ante nos el señor Egozcue Serrano que, **en su alegato** ante del entonces Tribunal de Circuito de Apelaciones, sostuvo que mediante su testimonio "…comparó sus ingresos mensuales en la oficina antes y después del accidente, se estableció el término por el cual ocurrieron

dichas pérdidas y se estableció la suma de la disminución de los ingresos de éste…"[16]. Sin embargo, **en la exposición narrativa estipulada** nada se expresó respecto a ello. El alegato no constituye parte de lo que se estipuló como exposición narrativa.

Sostiene que lo expresado por él en su testimonio respecto a la forma en que se determinó la cuantía, huelga, si las propias partes estipularon el hecho de que dicho testimonio nunca fue controvertido.[17] Una cosa no tiene que ver con la otra.

No hay controversia respecto al hecho de que no se admitió en juicio prueba documental alguna referente a la partida especial de pérdidas operacionales y de ingresos y que la única prueba al respecto consistió en el testimonio vertido en juicio por el señor Egozcue Rosario. La controversia ante el Tribunal de Circuito de Apelaciones era si dicho testimonio era **suficiente** para conceder la referida partida. Entendemos, por tanto, que correspondía al señor Egozcue asegurarse de que **la exposición narrativa estipulada** era correcta y completa. Es decir, le correspondía poner en posición al entonces Tribunal de Circuito de Apelaciones de decidir que su testimonio era base suficiente para apoyar la conclusión del foro primario de que la conducta del señor Reyes Carrasquillo le produjo

_____

[16] Alegato del señor Egozcue Rosario, pág. 13.

[17] Íd.

pérdidas operacionales y de ingresos ascendentes a $84,767. No lo hizo.

Adviértase que la exposición narrativa de la prueba debe ser un relato lo más fiel y exacto posible al verdadero testimonio vertido en el juicio y que las determinaciones de hechos que el Tribunal de Apelaciones incorpora en su sentencia son las que surgen de tales exposiciones narrativas.[18] Por ello, si las partes llegan a un acuerdo sobre la exposición narrativa de la prueba el foro intermedio apelativo discutirá el error pertinente en virtud de lo que **ésta** contenga.[19]

Concluimos que actuó correctamente el foro intermedio apelativo al determinar que no había en el expediente de apelación base evidenciaria en la cual apoyar la conclusión del foro primario de que el incumplimiento del señor Reyes Carrasquillo le produjo al señor Egozcue Rosario pérdidas operacionales y de ingresos por $84,767. Se trata, por tanto, de un caso de insuficiencia de la prueba, no de errónea apreciación de ésta. El foro intermedio apelativo no intervino con la credibilidad del testimonio en juicio del señor Egozcue Rosario. No se cometieron los errores alegados.

III

_____

[18] Sánchez Martínez, op cit., pág. 678.

[19] Hernández Colón, op cit., pág. 364.

Por los fundamentos antes expuestos, se confirma la sentencia recurrida, emitida por el Tribunal de Apelaciones.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel M. Egozcue Rosario

      Peticionario

          v.               CC-2004-124

Cesar Reyes Carrasquillo, et als

      Recurrido

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2006.

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia recurrida, emitida por el Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Rodríguez Rodríguez concurre sin opinión escrita. Los Jueces Asociados señor Rebollo López y señor Fuster Berlingeri no intervinieron.

                    Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo